**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|                              |   |                            |
|------------------------------|---|----------------------------|
|                              | ) | Nos. 04 C 3530, 04 C 3634, |
| IN RE BALLY TOTAL FITNESS    | ) | 04 C 3713, 04 C 3783,      |
| SECURITIES LITIGATION        | ) | 04 C 3844, 04 C 3864,      |
|                              | ) | 04 C 3936, 04 C 4342,      |
|                              | ) | 04 C 4697                  |

**MEMORANDUM OPINION**

Pending before the court are nine related securities fraud class actions brought against Bally Total Fitness Holding Corporation ("Bally") and three of its current or former officers and directors for violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated by the Securities and Exchange Commission, 17 C.F.R. 240.10b-5. We previously granted the parties' motions for consolidation of the cases for all purposes and directed that the consolidated cases be referred to as "In re Bally [Total] Fitness Securities Litigation." (Minute Order of Sept. 8, 2004.)[1] There are currently five groups of plaintiffs with motions seeking appointment as lead plaintiff and appointment of their chosen counsel as lead and liaison counsel.

---

[1] The consolidated cases are as follows (abbreviating defendants to simply "Bally"): Petkun v. Bally, 04 C 3530; Marcano v. Bally, No. 04 C 3634; Garco Invs., LLP v. Bally, No. 04 C 3713; Salzmann v. Bally, No. 04 C 3783; Rovner v. Bally, No. 04 C 3844; Strougo v. Bally, No. 04 C 3864; Koehler v. Bally, No. 04 C 3936; Rosenberg v. Bally, No. 04 C 4342; and Eads v. Bally, No. 04 C 4697. A tenth case, Ladenheim v. Bally, No. 04 C 4125, had been consolidated with the others as well, but was voluntarily dismissed on September 27, 2004.

For the reasons explained below, we appoint Cosmos Investment Company, LLC, managed by Dr. Lokesh Sharma, as lead plaintiff and reserve ruling on the appointment of counsel.

## BACKGROUND

Defendant Bally is a corporation that operates hundreds of fitness centers throughout North America with approximately four million members. Bally's securities are publicly traded on the New York Stock Exchange. During the time period relevant to this action, defendant John W. Dwyer was Bally's Chief Financial Officer, Executive Vice President, and a member of Bally's Board of Directors (the "Board"); defendant Lee S. Hillman was Chief Executive Officer, President, and Chairman of the Board. Defendant Paul A. Toback is Bally's current Chief Executive Officer, President, and Chairman of the Board. Plaintiffs allege that defendants violated federal securities laws by publicly disseminating false and misleading corporate reports, financial statements, and press releases.

On May 20, 2004, plaintiff Gladys Petkun filed the first of the related cases on behalf of all purchasers of Bally common stock on the open market during the period of May 17, 1999 through and including April 28, 2004.[2] Five days later, on May 25, plaintiff

---

[2] The Petkun complaint and the complaints in the Salzmann, Koehler, and Rosenberg actions allege a class period beginning on May 17, 1999, whereas the complaints in the Marcano, Garco, Rovner, Strougo, and Eads actions allege a class period beginning on August 3, 1999.

Carlos Marcano filed his complaint.  On that same day, Marcano's attorneys published notice on the PR Newswire, a news and information distributing service, advising members of the proposed class of their right to move to serve as lead plaintiff or plaintiffs no later than sixty days from the issuance of the notice (July 26, 2004).[3]

On July 26, 2004, motions to serve as the lead plaintiff(s) and for approval of their chosen counsel were filed by five groups of plaintiffs: (1) the Genesee County Employees' Retirement System ("Genesee"); (2) David and Dodie Carlton (the "Carltons"); (3) the Cosmos Group, consisting of Cosmos Investment Co., LLC (managed by Lokesh Sharma) and Robert Rovner; (4) the Chesson Group, consisting of Earl G. Chesson, Richard J. Jaffke, and Timothy Weise; and (5) the Pitcher Group, consisting of Sam Pitcher, Shelomoh and Sabiheh Sameyah, Marlyn Slenn, and Jacob Gerstenfeld.  After their initial motions, neither the Carltons nor the Pitcher Group filed any responsive briefs, but we will still consider their motions on the merits because they have not been withdrawn.

## DISCUSSION

In 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4 et seq., "to curb abuse in securities suits, particularly shareholder derivative suits in

---

[3]/  Evidently, Petkun's attorneys did not file a notice publicizing the pendency of the action before Marcano's attorneys did so.

which the only goal was a windfall of attorney's fees, with no real desire to assist the corporation on whose behalf the suit was brought." <u>Green v. Ameritrade, Inc.</u>, 279 F.3d 590, 595 (8th Cir. 2002). The PSLRA requires that the court "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter . . . referred to as the 'most adequate plaintiff.'" 15 U.S.C. § 78u-4(a)(3)(B)(i).

There is a presumption under the PSLRA that the "most adequate plaintiff" is the "person or group of persons" who "has either filed the complaint or made a motion in response to a notice;"[4] "in the determination of the court, has the largest financial interest in the relief sought by the class;" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted, however, "upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

---

[4] All of the proposed lead plaintiffs have filed timely motions in response to the notice described <u>supra</u>, so this factor is satisfied and we need not discuss it further.

## A.    **Artificial Groups as Lead Plaintiff**

We will deal first with the fact that three of the five lead plaintiff motions--those of the Cosmos Group, the Chesson Group, and the Pitcher Group--are brought by groups of investors who have nothing in common other than their investment in Bally securities. On this issue, we adopt the analysis of Judge Hamilton in <u>Sakhrani v. Brightpoint, Inc.</u>, 78 F. Supp. 2d 845 (S.D. Ind. 1999):

> The specific problem is whether a number of investors who have nothing in common other than their investment in a defendant's securities may aggregate their individual losses to form a "group of persons" with the greatest financial interest in the case so that, as a group, they are presumed under the PSLRA to be the most adequate representative(s) of the proposed class.
>     The PSLRA by its terms authorizes appointment of a "group of persons." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Such an appointment may be entirely appropriate where the group consists of investors who have prior relationships independent of the lawsuit, such as family members who manage investments jointly, or affiliated pension funds or mutual funds under common management.  Where the members of the group do not share business or other relationships independent of the lawsuit, however, this court concludes that appointment of such an artificial group of persons as lead plaintiffs should be rare under the PSLRA.
>     The plain language of the PSLRA does not require such appointments, and in most situations the appointment of an artificial group as lead plaintiffs will tend to undermine the goals of the PSLRA.  Some courts have held otherwise, however, and have given substantial or even controlling weight to the aggregation of losses by large, artificial groups of investors.  The unintended results have been to generate a flurry of otherwise pointless activity that adds nothing to the prompt and fair resolution of disputes, and to create powerful incentives for lawyers competing to represent the class to solicit clients and to create misleading forms of notice under the PSLRA that prompt plaintiffs to "volunteer" as lead plaintiffs when they think they are merely providing notice to preserve their claims.

The PSLRA simply does not require courts to reward lawyers' efforts to aggregate the losses of scores, hundreds, or even thousands of class members as proposed artificial "groups" of lead plaintiffs. Courts should give such efforts no weight in selecting lead plaintiffs under the PSLRA, including selections of smaller "subgroups" as representatives of much larger artificial groups. There is certainly no reason to make such an appointment of an artificial group or subgroup as lead plaintiff in this case.

. . .

Th[e] provisions of the PSLRA were designed to avoid situations in which a named class representative has a minimal financial stake in the case and acts primarily as a tool of the lawyers who may well have recruited him. The PSLRA was enacted with the explicit hope that institutional investors, who tend to have by far the largest financial stakes in securities litigation, would step forward to represent the class and exercise effective management and supervision of the class lawyers.

. . .

Relying on the PSLRA provision permitting appointment of a "group of persons" as lead plaintiff, enterprising counsel have competed with one another to collect scores, hundreds, sometimes even thousands of volunteers to serve as class representatives as each law firm tries to assemble the largest possible group with the largest possible aggregate losses.

. . .

[S]electing as "lead plaintiff" a large group of investors who have the largest aggregate losses but who have nothing in common with one another beyond their investment is not an appropriate interpretation of the term "group" in the PSLRA. Such an interpretation rewards lawyers who solicit plaintiffs and can produce an unmanageably large group of scores, hundreds, or perhaps even thousands of "lead plaintiffs." Such groups could not effectively manage the litigation and oversee class counsel for the benefit of the class. The "subgroup" solution to that oversight problem merely acknowledges the problem while clearly evading application of the statutory standard: which person or group of persons who can effectively oversee the case "has the largest financial interest in the relief sought by the class?" Having a subgroup represent an unmanageably large group, which in turn "represents" an even larger class is not consistent with the structure and purpose of the PSLRA,

and it is certainly not required by the language of the
PSLRA.

In addition, appointment of such artificial groups
or subgroups is likely to generate the same agency cost
and collective action problems that led to enactment of
the PSLRA in the first place.  See In re Telxon Corp.
Securities Litigation, 67 F. Supp. 2d at 816.  The
incentives created by the broad interpretation of the
term "group" tend to generate a great deal of truly
useless activity (the premature collection of forms from
investors) and controversy that adds nothing to the fair
or prompt resolution of the case, or to the adequate
representation of the class.  In fact, some of the
proposed groups of "lead plaintiffs" (like the original
Sakhrani Group in this case) are themselves large enough
to satisfy numerosity requirements for class actions
under Rule 23(a).  Nothing in the language of the PSLRA
specifically requires courts to reward and encourage such
enterprise with appointment of absurdly large,
artificial, and unmanageable groups of "lead plaintiffs."

As the court pointed out in In re Oxford Health
Plans, the lead plaintiff decision "must be made on a
case-by-case basis, taking account of the unique
circumstances of each case."  182 F.R.D. at 49; accord,
Advanced Tissue Sciences, 184 F.R.D. at 352; Chill v.
Green Tree Financial Corp., 181 F.R.D. at 409.  Thus,
there may well be a few situations in which a small group
might provide more effective oversight of class counsel
than any single investor.  The PSLRA gives courts the
discretion to take such an approach if that seems
reasonable based on the information the court has about
the volunteers for lead plaintiff or perhaps because of
significant differences of claims arising at different
times in a longer class period.  Nevertheless, this court
sees no benefit in giving any weight to a mechanical
aggregation of the losses of investors as a "group of
persons" whose only connection is their common losing
investment.

Id. at 846-47, 850, 851, 853.[5]  Although the proposed groups of

unrelated investors in the instant case are not very large--none

_____

[5]/ But see In re Cendant Corp. Litig., 264 F.3d 201, 266 (3d Cir. 2001)
(disagreeing with the Sakhrani court and other courts that have held that a group
of unrelated individuals usually cannot serve as lead plaintiff).

consists of more than five persons or entities--Judge Hamilton's
well-reasoned analysis applies nonetheless. As in <u>Sakhrani</u>, there
is no reason here to give weight to a "mechanical aggregation" of
unconnected investors assembled largely for their lawyers' benefit.
Accordingly, we will consider the individual investors in the
groups separately as lead plaintiff candidates, but we will not
recognize the artificial aggregations of the Cosmos Group, the
Chesson Group, or the Pitcher Group.[6]

**B.    <u>Appointment of Lead Plaintiff</u>**

The PSLRA does not specify exactly how we should decide which
plaintiff has the "largest financial interest" in the relief sought
by the class, and the parties make much of what "test" we should
use. Many courts simply determine which potential lead plaintiff
claims the greatest total approximate losses. <u>See, e.g.</u>,
<u>Taubenfeld v. Career Educ. Corp.</u>, No. 03 C 8884, 2004 WL 554810, at
*2 (N.D. Ill. Mar. 19, 2004); <u>In re Motorola Secs. Litig.</u>, No. 03
C 287, 2003 WL 21673928, at *3 (N.D. Ill. July 16, 2003); <u>Singer v.
Nicor, Inc.</u>, No. 02 C 5168, 2002 WL 31356419, at *2-3 (N.D. Ill.
Oct. 17, 2002); <u>Sofran v. LaBranche & Co.</u>, 220 F.R.D. 398, 401-02
(S.D.N.Y. 2004); <u>In re Gemstar -TV Guide Int'l, Inc. Secs. Litig.</u>,
209 F.R.D. 447, 450 (C.D. Cal. 2002). Not surprisingly, some of
the lead plaintiff candidates who are in the middle of the pack in

---

[6]/   For convenience, we will still refer to those individuals' arguments
as being advanced by the specific group of which they claim to be members.

terms of losses--particularly the Chesson Group--contend that we should also examine factors such as the number of shares purchased, the number of net shares purchased, and the total net funds expended by the plaintiff during the class period, citing <u>Lax v. First Merchants Acceptance Corp.</u>, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997) (adopting a plaintiff's suggestion to examine these "factors" along with approximate losses suffered). It is not self-evident, though, what weight these factors should be given in relation to the amount of loss, or even why we should consider them at all, and the Chesson Group provides no explanation. We believe that the best yardstick by which to judge "largest financial interest" is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball.

The approximate losses claimed by the plaintiffs seeking to be appointed lead plaintiff, rounded to the nearest thousand, are as follows: (1) Genesee, $359,000; (2) the Cosmos Group, $203,000 (Cosmos Investment Co., LLC, $112,000; Robert Rovner, $91,000); (3) the Chesson Group, $175,000 (Earl G. Chesson, $94,000; Richard J. Jaffke, $40,000; Timothy Weise, $40,000); (4) the Pitcher Group, $126,000 (Sam Pitcher, $68,000; Shelomoh and Sabiheh Sameyah, $29,000; Marlyn Slenn, $17,000; Jacob Gerstenfeld, $12,000); and (5) the Carltons, $107,000. Genesee, an institutional investor,

claims the greatest losses and therefore has the largest financial interest in the relief sought by the class.

As stated <u>supra</u>, the next question is whether Genesee "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 allows a member of a class to sue as a representative of the class only if (1) joinder of all members is impractical because the class is so numerous, (2) questions of law or fact are common to the class, (3) the representative's claims are typical of those of the class, and (4) the representative will fairly and adequately protect the interests of the class. <u>See</u> Fed. R. Civ. P. 23(a). "In selecting the lead plaintiff under the PSLRA, however, typicality and adequacy of representation are the only relevant considerations." <u>In re Motorola</u>, 2003 WL 21673928, at *3.

Typicality exists if the plaintiff's claim arises from the same events or course of conduct giving rise to the other class members' claims and is based on the same legal theory. <u>See</u> <u>id.</u> To meet the adequacy requirement, a plaintiff must demonstrate that "(1) his claims are not antagonistic or in conflict with those of the class; (2) he has sufficient interest in the outcome of the case to ensure zealous advocacy; [and] (3) he is represented by competent, experienced counsel who will be able to prosecute the litigation vigorously." <u>Id.</u> at *4.

It appears that Genesee is both typical and adequate under Rule 23(a). Its claims arise from the same alleged conduct and are based on the same theories as other class members. Moreover, there is no indication that Genesee's claims conflict with those of the class;[7] it has sufficient interest in the outcome to ensure zealous advocacy; and its chosen counsel seems to be competent and experienced. Indeed, neither the Cosmos Group nor the Chesson Group, the groups challenging Genesee's appointment as lead plaintiff, develops any argument that Genesee does not meet these requirements.

The statutory presumption thus favors Genesee as lead plaintiff. The Cosmos Group and the Chesson Group, however, attempt to rebut this presumption by arguing that Genesee is subject to a unique defense and thus cannot adequately represent the class. According to the Cosmos Group and the Chesson Group, Genesee may not be able to prove loss causation because it is an "in-and-out" trader that purchased and then sold all of its stock during the class period, many months before the alleged fraud was first revealed. Genesee purchased and sold all of its shares of Bally by September 2002 and therefore did not hold any shares in April 2004, when the alleged fraud became public.

---

[7] Assuming that being subject to a "unique defense" is not part of this initial typicality or adequacy inquiry, as the structure of the PSLRA implies.

Plaintiffs suing under the PSLRA must prove that the defendant's purported fraudulent statement or omission was the cause of their loss. See 15 U.S.C. § 78u-4(b)(4). The Cosmos Group and the Chesson Group cite case law indicating that in-and-out traders like Genesee face difficulties in attributing the decline in the price of their stock to the alleged fraudulent conduct. See In re Cable & Wireless, PLC, Secs. Litig., 217 F.R.D. 372, 379 (E.D. Va. 2003) (denying motion for appointment as lead plaintiff in part because movant sold all of its shares before the alleged fraud was revealed to the public); Arduini/Messina P'ship v. National Med. Fin. Servs. Corp., 74 F. Supp. 2d 352, 360-61 (S.D.N.Y. 1999) (dismissing securities fraud claim because plaintiffs failed to allege loss causation; plaintiffs had sold all their stock before disclosure of purported fraud).[8]

Genesee asserts that it will be able to establish loss causation and cites case law for the proposition that in-and-out traders can prove loss causation. The PSLRA, though, provides that we ask simply whether Genesee is likely to be "subject to" the unique defense regarding loss causation; we do not have to determine that the defense is likely to succeed. And it does appear that Genesee would have to use considerable resources to establish that even though it was an in-and-out trader, its losses

---

[8] Bally has also submitted a brief in response to the lead plaintiff motions. Bally states that it does intend to assert a loss causation defense against in-and-out trader plaintiffs such as Genesee.

nevertheless were caused by the alleged fraudulent statements. Our concern is that the time and attention Genesee would be required to devote to the loss causation issue (not to rebut a defense, but to prove its case) would distract it from the claims of the rest of the class. This would not be the case with the other prospective lead plaintiffs. Accordingly, we find that Genesee's status as presumptive lead plaintiff has been rebutted.

After Genesee, the individual investor claiming the next largest total losses is Cosmos Investment Co., LLC ("Cosmos"), with $112,000.[9] Cosmos is an investment vehicle through which Dr. Lokesh Sharma makes investments on behalf of himself, his wife, and his parents. Cosmos is managed by Cosmos Capital Group, Inc., which in turn is managed by Dr. Sharma. (Declaration of Douglas Risen in Support of Cosmos's Motion, Ex. A, Certification of Lokesh Sharma; Cosmos's Reply at 10-11.)

Cosmos satisfies the typicality and adequacy requirements. Its claim arises from the same alleged conduct as the other class members, is based on the same theory, and does not conflict with that of the class; Cosmos has sufficient interest in the outcome of the case; and Cosmos appears to be represented by competent, experienced counsel. Moreover, there is no indication that Cosmos

---

[9] As stated *supra*, we will not recognize the artificial aggregations of the Cosmos Group, the Chesson Group, or the Pitcher Group.

would not fairly and adequately protect the interests of the class
or is subject to a unique defense.[10]

We will appoint Cosmos, as managed by Dr. Sharma, to serve as
lead plaintiff.

## C. **Appointment of Lead and Liaison Counsel**

The PSLRA provides that "[t]he most adequate plaintiff shall,
subject to the approval of the court, select and retain counsel to
represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Cosmos has
selected Berger & Montague, P.C. ("Berger & Montague") as lead
counsel and Much Shelist Freed Denenberg Ament & Rubenstein, P.C.
("Much Shelist") as liaison counsel. Both firms have substantial
experience in securities class action litigation. (Declaration of
Douglas Risen in Support of Cosmos's Motion, Exs. D & E, Firm
Biographies.)

Cosmos's motion, however, contains no information regarding
the anticipated staffing of this case or proposed attorneys' fees
for lead and liaison counsel. Courts in this district have taken

---

[10]/ The Chesson Group contends that there is an "obvious conflict of
interest" with respect to Robert Rovner, who is the other member of the proposed
(and now rejected) Cosmos Group. Robert Rovner is married to Sherrie Savett, a
partner in Berger & Montague, the law firm that is Cosmos's proposed lead
counsel. The Chesson Group and Genesee argue that Rovner's personal interests,
due to his wife's role as class counsel, would necessarily conflict with his duty
to the class as lead plaintiff. We agree that this would constitute a conflict
that would preclude Rovner from fairly and adequately protecting the interests
of the class.
    The Chesson Group takes the conflict argument a step further, objecting to
Cosmos/Dr. Sharma's adequacy on the same basis and arguing that "Mr. Sharma
should attest to whether his counsel alerted him to the conflict and if he gave
informed consent to waive the conflict prior to filing his motion." (Chesson's
Reply at 6.) We are unpersuaded.

these factors into account in the decision to approve counsel selected by a lead plaintiff. <u>See</u> <u>Taubenfeld</u>, 2004 WL 554810, at *5 (citing cases). Accordingly, counsel for lead plaintiff is instructed to submit a memorandum on anticipated staffing and attorneys' fees for the court's consideration. Among the matters the memorandum should address is the need for separate counsel to serve as "liaison." We will have to be persuaded that lead counsel is unable to perform all functions that are necessary to the efficient representation of the class. The fact that it has been customary to appoint liaison counsel in class actions is not a reason to do it here. We have stopped doing it, with no discernible ill effects. The memorandum should also discuss the question of whether the fee should be based on a percentage of recovery, rather than "lodestar," and, if so, what percentage(s).

## **CONCLUSION**

The motion of the Cosmos Group for appointment as lead plaintiff is denied in part, to the extent that it seeks appointment of the Cosmos Group as a whole, and granted in part, to the extent that the court appoints Cosmos Investment Company, LLC, managed by Dr. Lokesh Sharma, as lead plaintiff.

The court reserves ruling on the appointment of class counsel. Cosmos is directed to submit a brief that addresses proposed staffing and attorneys' fees by April 4, 2005. If Bally wishes to comment, it may do so by April 15, 2005.

The motions of Genesee, the Carltons, the Chesson Group, and the Pitcher Group are denied.

A status hearing in this case is set for April 20, 2005, at 10:30 a.m.

DATE:     March 15, 2005

ENTER:   _____

John F. Grady, United States District Judge